UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MT. HAWLEY INSURANCE COMPANY,

                    Plaintiff,

        -against-

ABRAHAM LITTLE NECK DEVELOPMENT
GROUP, INC., and GILBERTO DIAZ,

                  Defendants.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 09-3463 (PKC)(ARL)

**LINDSAY, Magistrate Judge:**

This is an insurance coverage dispute arising from the alleged injuries of the defendant Gilberto Diaz ("Diaz") in September 2008. The accident occurred at a construction site managed by the defendant Abraham Little Neck Development Group, Inc. ("Abraham"), who was insured by the plaintiff, Mt. Hawley Insurance Company ("Mt. Hawley"). Before the court, on referral from District Judge Chen, is the plaintiff's renewed motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth herein, the undersigned recommends that the motion be granted.

## BACKGROUND

**A. Factual Background**

Diaz was allegedly injured while he was working as an employee of non-party E. Anderson Enterprises ("Anderson"), a framing subcontractor hired by Abraham.[1] At the time of the accident, Abraham was insured under a commercial general liability policy ("the policy") issued by Mt. Hawley. Pursuant to the terms of the policy, Abraham was required to provide Mt.

---

[1] Additional factual background to this action is set forth in Judge Spatt's Memorandum of Decision and Order dated November 21, 2011, *Mt. Hawley Insurance Co. v. Abraham Little Neck Development Grp., Inc.,* 825 F. Supp. 2d 384 (E.D.N.Y. 2011).

Hawley notice "as soon as practicable of an 'occurrence' or an offense which may result in a claim." Delahunt Aff., Ex. 3, Section IV(2)(a).

On November 14, 2008, Diaz's attorney, Scott Zlotolow ('Zlotolow") notified Abraham in writing that his client had been injured at its construction site ("the November 14 letter"). *Id.*, Ex. 8. Zlotolow's letter contained the following language:

> Kindly forward this letter to your insurance carrier in order that
> they may contact us immediately with a view towards an amicable
> adjustment herein.

*Id.* Despite Zlotolow's request, Abraham did not forward the letter to Mt. Hawley. Instead, on November 18, 2008, Abraham wrote to Zlotolow, indicating in its letter that Diaz was not an employee of Abraham, his injuries were covered by worker's compensation insurance, and his employer had signed a hold harmless agreement with Abraham. *See Mt. Hawley*, 825 F. Supp. 2d at 388.

According to Zlotolow, upon receipt of Abraham's response, Anthony Bilello from his office called Abraham. Bilello told Zlotolow that Abraham's representative indicated that the company's position had been set forth in the November 18 letter and they "wouldn't even confirm if [the company] had coverage." *Id.*, Ex. 3 at 16:18-19:12. Accordingly, on November 21, 2008, Zlotolow sent Abraham a second letter in which he stated:

> I am in receipt of your correspondence dated November 18, 2008
> and thank you for the same. However, as it appears that your
> group was the general contractor at the job site where my client
> was injured, I respectfully request that [you] notify your liability
> carrier of this incident at your earliest convenience.

Delahunt Aff., Ex. 9. Zlotolow copied Anderson on the letter.

When he had not received a response by mid-December, Zlotolow called Abraham

himself and spoke to its office manager, "Debbie." Gold Aff., Ex. 3 at 24:3. He asked Debbie for the name of the carrier or confirmation that Anderson did not have coverage. *Id.* Debbie again responded that Abraham's position was set forth in its letter, but she said she would let Thomas Abraham know that he had called. *Id.* at 24:21-26:24. Thomas Abraham returned Zlotolow's call the same day, and Zlotolow once again reiterated the need to put the insurance carrier on notice. *Id*. at 28:9-30:5. Thomas Abraham responded that "[h]e talked to his people, his people [were] telling him something else." *Id.* at 29:8-29:11. Zlotolow did not know if his "people" meant his attorney, but by the end of the conversation, he knew he would have to commence the lawsuit to elicit a response. *Id.* at 30:6-30:9.

Accordingly, on January 30, 2009, Diaz commenced an action against Abraham in the Suffolk County Supreme Court. Gold Aff., ¶ 11. When Abraham defaulted, Zlotolow hired a private investigator to track down the insurance information. Id. On June 10, 2009, almost five months later, Abraham received a call from an investigator asking if he had answered the summons in the Diaz case. *See Mt. Hawley,* 825 F. Supp. 2d at 388. Abraham claims it had not received notice of the action until that day, at which point it immediately wrote to its insurance broker. *Id.* In its letter, Abraham stated:

> Last November we got a letter from an attorney saying a Gilberto Diaz was hurt on our job [in Oyster Bay]. Mr. Diaz was employed by Eric Anderson Enterprises, our framing subcontractor. I wrote back a letter giving the attorney all of the information including the fact we have a hold harmless agreement from Mr. Anderson. I am sending you the attorney letter, along with a copy of our response, as well as a copy of our hold harmless agreement with Eric Anderson. An investigator called today asking if we had answered their summons (we never received), so I figured this is now a lawsuit and should advise our insurance company. I thought this was Eric's responsibility seeing as Mr. Diaz was employed by him.

3

*Id.* Upon receipt, Abraham's insurance broker gathered additional information about the incident from Abraham and then forwarded the information to Mt. Hawley. *Id.* Five days later, on June 15, 2009, Mt. Hawley sent Abraham a letter denying coverage to Abraham, Diaz, and unnamed others based on, among other things, their alleged non-compliance with the notice provision of the Policy. Delahunt Aff., Ex. 4. Mt. Hawley specifically indicated that Abraham had failed to notify the company of the claim despite having been made aware of the accident in November 2008. *Id.* According to Diaz, he first learned that Mt. Hawley was Abraham's carrier when he received a copy of that letter. *See* Gold Aff., ¶ 12.

Shortly after the declination letter was issued, Mt. Hawley's representative, Michael Stockbridge ("Stockbridge") received a phone call from Peter Cannava ("Cannava") from Zlotolow's office. Gold Aff., Ex. 2, 22:15-24:4. When Stockbridge returned Cannava's call, Cannava indicated that Diaz had received the disclaimer letter and seemed "somewhat dismayed that [Mt. Hawley] disclaimed coverage." *Id.* at 24:24-25:5. He also indicated that Diaz would be pursuing a default judgment against Abraham because of the severity of his injuries. *Id.* at 26:4-26:9.

## B. The Procedural Background

On August 10, 2010, Mt. Hawley commenced this federal action. In June 2011, Mt. Hawley moved for summary judgment seeking a declaration that it had no obligation under the Policy to cover, defend or indemnify Abraham or Diaz in connection with the underlying accident. Mt. Hawley argued in support of the motion that Abraham had breached the notice

provision.[2] In November 2011, Judge Spatt granted the motion with respect to Abraham, but denied the motion as to Diaz. In doing so, Judge Spatt noted:

> Although Insurance Law § 3420(a)(3) provides an injured party with the right to fulfill an insurance policy's notice obligation directly rather than relying on the insured, 'the injured party has the burden of proving that he or she, or counsel, acted diligently in attempting to ascertain the identity of the insurer, and thereafter expeditiously notified the insurer.' However, an injured party cannot satisfy this burden if it never actually gives notice to the insurance carrier
>
> Here, the only correspondence in the record before the Court from Diaz is the November 14, 2008 letter from Diaz's attorney to Abraham Little Neck requesting that Abraham Little Neck forward the information about Diaz's claim to its insurer. If this were the only attempt Diaz made to notify the Plaintiff, it would be insufficient as a matter of law. However, because the Plaintiff did not address its potential obligation to Diaz in its Rule 56.1 statement, summary judgment submissions, or even the complaint in this action, the Court does not know whether Diaz ever notified the Plaintiff directly, and, if so, whether that notice was timely. Accordingly, the Court has no information upon which to base a finding that the Plaintiff has no obligation to cover, defend, or indemnify Diaz and therefore the Plaintiff's motion for summary judgment as against Diaz is denied, without prejudice.[3]

*Mt. Hawley,* 825 F. Supp. 2d at 396. On December 16, 2011, the Court then held a hearing with regard to the status of the claims against Diaz. *Mt. Hawley Ins. Co. v. Abraham Little Neck Devel. Group, Inc.,* 856 F. Supp. 2d 510 (E.D.N.Y. 2012). At the hearing, counsel for Diaz

---

[2] Mt. Hawley also sought a declaration with respect to its obligations to cover, defend, or indemnify "any other person" in connection with the September 22, 2008 accident. However, in his November 2011 decision, Judge Spatt indicated that the request for a determination as to Mt. Hawley's obligations to individuals or entities that are not parties to this action was not properly before the Court. *Mt. Hawley,* 825 F. Supp. 2d at 389.

[3] Diaz did not submit a response to the plaintiff's motion for summary judgment although he had opposed the plaintiff's initial request for a briefing schedule.

argued that "steps had been taken to ascertain the identity of Mt. Hawley in order to provide the requisite notice, and thus, the due diligence requirement was satisfied." *Id.* at 512-13. Accordingly, discovery was reopened for the limited purpose of determining "(1) whether Diaz engaged in the requisite due diligence to identify Mt. Hawley and (2) when Diaz received notice that Mt. Hawley was Abraham Little Neck's insurer." *Id.* at 514.

In April 2013, the matter was reassigned to District Judge Chen, who thereafter granted Mt. Hawley's request to file the renewed motion for summary judgment now before the court.

## DISCUSSION

**A. Summary Judgment Standards**

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead,* 2012 U.S. Dist. LEXIS 133281 *15 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.*, 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(c). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996), *cert denied,* 520 US 1228 (1997).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point

to issue-finding; it does not extend to issue-resolution.'" *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]here must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish*, 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999). With these standards in mind, the court addresses the pending motion.

**B. Non-Compliance with Local Rule 56.1**

As a threshold matter, the court addresses Diaz's failure to comply with Local Rule 56.1. Pursuant to Rule 56.1(c), "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Moreover, "[e]ach statement by the movant or opponent . . . controverting any statement of material fact must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local rule 56.1(d). Diaz has not complied with these requirements.

"Where the party opposing a motion for summary judgment fails to submit a *proper*

counterstatement of material facts," "the court may choose to accept all factual allegations of the opposing part[y] as true for the purposes of deciding the motion." *Shukla v. Sharma,* 2009 U.S. Dist. LEXIS 90044 *28-30 (E.D.N.Y. Aug 21, 2009)(citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). Alternatively, the court may "'opt to conduct an assiduous review of the record.'" *Id.* at *30. Given the nature of the case, the court has opted to undertake a comprehensive review of the record rather than accept the factual allegations as true.

## C. Diaz's Compliance with the Notice Provision

The court has already determined that Diaz's November 14, 2008 letter to Abraham requesting that it forward the information about his claim to its insurer was insufficient as a matter of law. *See Mt. Hawley,* 825 F. Supp. 2d at 396 (citing *Tower Ins. Co. of N.Y. v Jaison John Realty Corp.*, 60 A.D.3d 418, 419, 874 N.Y.S.2d 91, 92 (1st Dep't 2009) (holding that an injured party's letter to the insured advising him to "notify his insurer of the accident, and that if counsel did not hear from [the insured's] insurer or legal representative within 20 days, [the injured party] would commence an action" was insufficient under Insurance Law § 3420(a)(3) because the injured party "never attempted to ascertain the identity of . . . [the] insurer and merely relied on correspondence to [the insured]")). In addition, the court found that Abraham's letter to Mt. Hawley in 2009 was untimely. *Id.* at 390-93. Nonetheless, recognizing that an injured party "can prevent the insurer from disclaiming coverage on the basis of the insured's failure to provide timely notice by notifying the insurer themselves," *see U.S. Underwriters Ins. Co. v. Tauber*, 604 F. Supp. 2d 521, 529 (E.D.N.Y. 2009) (citing *Maldonado v. C.L.-M.I. Props., Inc.*, 39 A.D.3d 822, 823, 835 N.Y.S.2d 335 (2d Dep't 2007)), Judge Spatt left open the question of whether Diaz ever notified Mt. Hawley directly, and, if so, whether that notice was timely.

8

The court must, therefore, address two main issues in the report. First, the court must address whether Diaz took sufficient steps to ascertain Mt. Hawley's identity in order to provide the requisite notice, and thus, satisfy the due diligence requirement. Second, the court addresses whether Diaz expeditiously notified Mt. Hawley after he learned that Mt. Hawley was the insurer.

    a. *Diaz's attempts to ascertain Mt. Hawley's identity.*

As was previously mentioned, "an insured's failure to provide notice may justify a disclaimer vis-à-vis the insurer and the insured; [however] it does not serve to cut off the right of an injured claimant to make a claim as against the insurer." *Konig v. Hermitage Ins. Co.,* 93 A.D.3d 643, 645 (2d Dep't 2011)(citing *Becker v Colonial Coop. Ins. Co.*, 24 A.D.3d 702,704, 806 N.Y.S. 720 (2005)). In other words, an "injured person 'is not to be charged vicariously with the insured's delay.'" *Id.* (quoting *Lauritano v American Fid. Fire Ins. Co.*, 3 A.D.2d 564, 568 (1957), aff'd 4 N.Y.2d 1028 (1958)). However, when an injured person seeks to exercise his or her independent right to give notice to an insurer, he or she "has the burden of proving that he or she, or counsel acted diligently in attempting to ascertain the identity of the insurer and, thereafter, expeditiously notified the insurer." *Mt. Hawley,* 825 F. Supp. 2d at 396 (citing *Hanover Ins. Co. v. Prakin*, 81 A.D.3d 778, 780, 916 N.Y.S.2d 615, 68 (2d Dep't 2011)).

In assessing whether the injured party acted diligently, the court must judge the injured party "'by the prospects for giving notice that were afforded him, not by those available to the insured.'" *Becker v. Colonial Coop. Ins. Co.*, 24 A.D.3d at 706 (quoting *Lauritano v American Fid. Fire Ins. Co.*, 3 A.D.2d 564, 568 (1957), aff'd 4 N.Y.2d 1028 (1958)). In other words, "[w]hat is reasonably possible for the insured may not be reasonably possible for the person he

9

has injured [and the] passage of time does not of itself make delay unreasonable." *Id.* "Thus, the pertinent inquiry is whether the plaintiff pursued his rights with 'as much diligence as was reasonably possible.'" *Id.*

In this case, Diaz's efforts in attempting to ascertain Mt. Hawley's identity were diligent. While Zlotolow's letter of November 18, which is virtually identical to the November 14 letter, was insufficient, *see Mt. Hawley,* 825 F. Supp. 2d at 396*,* Diaz's counsel also placed a number of calls to Abraham. On November 18, 2009, approximately two months after the accident, Anthony Bilello, an attorney employed by Zlotolow, called Abraham and spoke to Abraham's representative and conveyed that he was "looking for insurance information." Gold Aff., Ex. 4, 13:21-14:7. In mid-December, Zlotolow also called Abraham and also spoke to Debbie, Abraham's office manager. *Id.* at Ex. 3, 23:13-25:5. Debbie again reiterated the position that Abraham had set forth in the November letter, so he asked to speak to Thomas Abraham directly. Id. at 26:15-27;12. When Zlotolow was finally able to speak to Thomas Abraham he explained the importance of placing the carrier on notice and requested Abraham's carrier information. *Id.* at 28:6:29:7. When Thomas Abraham refused to give him insurance information, he commenced a lawsuit on Diaz's behalf and hired a private investigator. Gold Aff., ¶ 11; Ex. 3, 35:2-41:5. The court finds Diaz's efforts to identify Abraham's carrier to be diligent. *Compare Lauritano*, 3 A.D.2d 564, 569 (attorney for plaintiff's aggressive search for necessary information, follow-up letters and phone calls, personal visits and inquiries to the Motor Vehicle Bureau of New York, Alabama, the Police Department, the Public Service Commission and the Interstate Commerce Commission, and motion to compel disclosure found to be diligent), *with American Home Assur. Co. v. State Farm Mut. Auto Ins. Co.,* 277 A.D.2d 409 (2d Dep't 2000)(seven month delay in

obtaining police report after learning of the potential for an action, and subsequent delay in contacting Department of Motor Vehicles for insurance information failed to satisfy due diligence requirement).

      *b. Diaz's actions after he identified Mt. Hawley.*

However, even where, as here, an injured party has acted diligently in ascertaining the identity of the insurer, the injured party must then "expeditiously" notify the insurer. *See Garay v. Nat'l Grange Mut. Ins. Co.,* 117 Fed. App'x 785, 787 (2d Cir. 2004). Diaz contends that two days after he learned of Mt. Hawley's identity from its declination letter to Abraham, he contacted the company. He claims to have done so by virtue of a recorded phone message that his counsel left for Mt. Hawley's claims examiner, Michael Stockbridge, and a subsequent phone conversion between counsel and Stockbridge. While there is no question Mt. Hawley was aware of the occurrence and Diaz's claim by the time Diaz's counsel spoke to Stockbridge, the court cannot ignore the plain language of the New York Insurance law. It is well-settled that the notice called for in §3420(a) must be written, *whether by the insured or by the injured party*." *Maryland Cas. Co. v. Efficient Solutions, Inc.,* 2013 U.S. Dist. LEXIS 33494 * 21 (W.D.N.Y. Feb. 14, 2013)(injured party's telephone call to insurer after learning the identity of the insurer from a declination letter failed to satisfy notice provision)(emphasis added); *compare with Walters v. Atkins,* 179 A.D.2d 1067 (4th Dep't 1992)(injured party's written request to insurer to provide coverage two months after learning its identity satisfactory notice). Thus, even though "the notice required of an injured party is measured with less rigidly than that required of the injured," *Wright v. Exchange Ins. Co.,* 234 A.D.2d 916 (4th Dep't 1996)(copies of police report and correspondence between injured party and insured sufficient to satisfy written notice requirement), neither the

phone message nor the phone call to Stockbridge satisfied Diaz's the written notice requirement.

Moreover, Diaz's argument that Mt. Hawley waived its right to demand written notice because Stockbridge did nothing following his conversation with Cannava other than document his file is without merit. As Mt. Hawley has correctly pointed out, "waiver is an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *Travelers Indem. Co. v. Northrop Grumman Corp.,* 2013 U.S. Dist. LEXIS 161552 * 33 (S.D.N.Y. Oct. 31, 2013). Nothing in the record suggests that Mt. Hawley intentionally relinquished its rights. In fact, Cannava's call to Stockbridge expressing his dismay that Mt. Hawley had denied coverage as to Diaz is a clear indication that Mt. Hawley still intended to disclaim coverage based on the late notice. Gold Aff., Ex. 2, 24:22-26:20.

Accordingly, Diaz's first satisfactory notice to Mt. Hawley occurred in 2012, three years after it learned that Mt. Hawley was Abraham's carrier, and was, therefore, untimely. *See New York v. Blank*, 27 F.3d 783, 796 (2d Cir. 1994)(collecting New York and Second Circuit cases finding 10-day, 29-day, and 53-day delays to be unreasonable); *but see Continental Ins. Co. v. Atlantic Cas. Ins. Co.,* 603 F.3d 169 (2d Cir. 2010)(injured party acted diligently when it sent insurer notice the day after it learned of insurer's identity although fire had occurred five-months earlier).[4] Thus, the undersigned recommends that summary judgment be granted.

## OBJECTIONS

A copy of this Report and Recommendation is being served by the Court on all parties.

---

[4] Finally, to the extent Diaz appears to be arguing that Mt. Hawley cannot deny coverage because it was not prejudiced by the untimely notice, that issue has already been rejected by the court. *See Mt. Hawley,* 825 F. Supp. 2d at 393-95. Accordingly, the court will not consider this argument.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
January 29, 2015

_____/s/_____
Arlene R. Lindsay
United States Magistrate Judge